IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02889-KAS

DEBORAH BARDOL,

Plaintiff,

v.

CITY OF SALIDA,

Defendant.

---

**ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion to Dismiss** [#17][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#24],[3] and Defendant filed a Reply [#30]. The case has been referred to the undersigned for all purposes on consent of the parties. *Signed Consent/Non-Consent Form* [#37]; *Order of*

---

[1] "[#17]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[3] In the days following Defendant's filing of its Motion to Dismiss [#17], Plaintiff filed 10 documents with the Court. Based on a review of these documents, Plaintiff appears to have intended to file a Response brief, a Notice of Supplemental Authority, and three additional Notices containing corrections, clarifications, and additional legal arguments. These five documents may have been submitted to the Court both in email and documentary form and were thus filed twice. *Compare* ECF Nos. [#18, #19, #20, #21, #22], *with* ECF Nos. [#23, #24, #27, #28, #29]. To the extent that the Court refers to or relies on these filings, the Court will exclusively use the later-filed set of documents because they were filed in a format that is easier to read.

*Reference* [#38]. The Court has reviewed the briefs, the case file, and the applicable law. For the reasons stated below, the Motion [#17] is **GRANTED**.

## I. Background

This employment discrimination case arises from Plaintiff's termination from the Salida Fire Department. The Court draws the following facts from Plaintiff's January 22, 2025 charge of discrimination, which she attached to the operative Fourth Amended Complaint [#8].

Plaintiff began working for the City of Salida (the "City") in September 2015, and her most recent job title was Administrative Coordinator for the Salida Fire Department. *Fourth Am. Compl.* [#8] at 13. In April 2021, Plaintiff learned that then-Fire Chief Doug Bess ordered employees to dump toxic waste into the City burn pile. *Id.* at 13, 46. In or around December 2021, Bess made sexually suggestive comments to Plaintiff, including "I hate for you to go but I love to watch you leave," "I like your hair back instead of down," and "I love your pink skirt." *Id.* at 13. He also once stepped on Plaintiff's foot and injured her toe. *Id.*

Plaintiff alleges that Assistant Fire Chief Kathy Rohrich also "created a toxic environment which lowered morale." *Id.* Plaintiff claimed that both Bess and Rohrich "would mock, slander, and make fun of employees in the Fire Department." *Id.* Plaintiff explains that "[p]eople would come in and the minute they left, Doug and Kathy would start . . . calling them idiots and how stupid they were." *Id.* at 15. Two firefighters apparently once overheard Bess and Rohrich gossiping about Plaintiff; they apparently said that she was "stupid," "couldn't read a calendar," and "wore skirts to shake [her] ass at the firefighters." *Id.*

Plaintiff alleges that, in August 2023, she and several firefighters submitted a harassment complaint concerning Bess and Rohrich's conduct to the City. *Id.* at 13. In September 2023, Bess and Rohrich apparently made a joke about throwing chemicals away in a dumpster, which Plaintiff also reported to the City. *See id.* at 26-27, 46. The City retained a private firm to conduct an investigation that "yielded no finding of misconduct." *Id.* at 13, 15. The City acted on the recommendations in the resulting report without paying for a copy of it. *Id.* at 16.

Thereafter, Chief Bess retired from the Fire Department. *Id.* at 13. City Administrator Christy Doon suggested transferring Plaintiff from the Fire Department to the Finance Department in order to "protect [Plaintiff] and provide [her] with a safe place to work." *Id.* However, Plaintiff opposed the transfer and was ultimately permitted to stay at the Fire Department. *Id.* In the interim period, Rohrich served as the acting Chief of the Fire Department, and "was just a robot" toward Plaintiff, only speaking to her "when needed." *Id.* at 16.

In March 2024, Aaron Jonke took over as Chief of the Fire Department, and he was "especially stern to [Plaintiff] when it came to work expectations." *Id.* at 13. He assigned her "new tasks which were not in [her] job description and [she] managed to learn new duties slowly and surely." *Id.* These tasks required competency with Microsoft Word and Excel, Facebook, Canva, web design, accounting, and budgeting—skills that Plaintiff did not possess but tried to learn from YouTube videos when her time allowed. *Id.* at 16-17. Nevertheless, within a month of taking over as Chief, Jonke put Plaintiff on a performance improvement plan because Plaintiff "was not working fast enough to reach his expectation for an administrator." *Id.* at 13. Jonke terminated Plaintiff in August 2024

because she "could not fulfill the duties of [her] current role at the Fire Department." *Id.* at 13-14. Plaintiff asked Jonke if she was being fired because she did not get along with Rohrich, to which Jonke allegedly replied, "It is very awkward in that office," Plaintiff's relationship with Rohrich "just [was] not working," and "she is sworn personnel and a career fireman and you are just an administrator." *Id.* at 14, 17. Plaintiff alleges her belief that she was terminated in retaliation for her complaint to the City. *Id.* at 14.

At some point after her termination, Plaintiff reported the 2021 toxic waste dumping incident to several regulatory bodies, who ultimately told Plaintiff to take up her concerns with the Colorado Civil Rights Division (CCRD). *See id.* at 43. Plaintiff submitted her charge of discrimination in January 2025, and in June 2025, the CCRD made a No Probable Cause determination. *Id.* at 21-22. The EEOC conducted a substantial weight review and issued her a Notice of Right to Sue letter. *Id.* at 47.

Plaintiff asserts three[4] claims against the City: (1) retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a); (2) hostile work environment in violation of Title VII, 42 U.S.C. § 2000e-2(a), and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-402; and (3) First Amendment retaliation pursuant to 42 U.S.C.

[4] In the operative Fourth Amended Complaint [#8], Plaintiff styles a fourth claim for "Spoliation of Evidence" pursuant to Fed. R. Civ. P. 37(c). She later clarifies that she did not intend to assert spoliation as a standalone cause of action, presumably in response to the City's request for attorney fees. *See Motion* [#17] at 11-13; *Notice of Clarification* [#27]; *Reply* [#30] at 9-10. She states that she included spoliation in her complaint only to "preserve factual context" and the "possibility of sanctions . . . should discovery confirm improper destruction" of evidence. *Notice of Clarification* [#27]. Accordingly, the Court deems the spoliation claim voluntarily dismissed. Further, although the Court does not condone Plaintiff's strategy, neither does the Court view her conduct as rising to the level where an award of attorney fees is appropriate. *See Fortner v. Freeman*, No. 24-cv-01037-MDB, 2025 WL 3228209, at *4 (D. Colo. Nov. 19, 2025) ("A *pro se* litigant's missteps often stem from a lack of experience with the litigation process. While the Court . . . strongly disfavors contentious or obstructive behavior, it recognizes that such conduct frequently arises from unfamiliarity with the federal rules . . . and the misguided view that success is best achieved by challenging every action taken by opposing counsel rather than cooperating in good faith.").

§ 1983. The City moves to dismiss, asserting that any claim premised on former Chief Bess's comments or the City's investigation is time barred. *Motion* [#17] at 5. Further, the City argues that Plaintiff failed to plausibly allege any gender-based harassment or any causal connection between her protected activity and her termination. *Id.* at 6, 8.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). The court's function on a Rule 12(b)(6) motion, however, is not "to weigh potential evidence that the parties might

present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## III. Analysis

### A. Untimely Claims

The City first argues that, because Plaintiff's charge of discrimination was filed on January 22, 2025,[5] any allegations of discrimination occurring before March 28, 2024, cannot form the basis for her Title VII or CADA claims. *Motion* [#17] at 5. The Court agrees. "The EEOC charge must be filed within 300 days of the alleged unlawful act." *Jones v. United Airlines, Inc.*, No. 24-cv-03013-NYW-NRN, 2025 WL 2740502, at *2 (D. Colo. July 23, 2025); 42 U.S.C. § 2000e-5(e)(1). The same requirement applies to CADA claims. *Jones*, 2025 WL 2740502, at *2; COLO. REV. STAT. § 24-34-403.

To be sure, most of the conduct challenged in the Fourth Amended Complaint occurred after Jonke took over as Fire Chief in March 2024, and such conduct falls within the operative limitations period. *See Fourth Am. Compl.* [#8] at 4. But conduct committed by Rohrich while she served as acting Chief from August 2023 to March 2024—including that she "was just a robot" toward Plaintiff, only speaking to her "when needed"—is time barred. *Id.* at 16. Further, Chief Bess's actions predating his August 2023 retirement and Plaintiff's complaint to the City undoubtedly cannot form an independent basis for Plaintiff's claims.

### B. Claim One: Retaliation

In support of her first claim, Plaintiff alleges that she engaged in protected activity by submitting a complaint with the City Administrator concerning former Chief Bess's

[5] The Court does not credit the date that Plaintiff states she "started" the charge. *Compare Fourth Am. Compl.* [#8] 14, *with id.* at 69.

derogatory remarks, Bess and Rohrich's pattern of making fun of employees behind their backs, and the toxic waste dumping incident. *Fourth Am. Compl.* [#8] at 4. In response, Chief Jonke retaliated against her by giving her minimal assignments, placing her on a performance improvement plan, and ultimately terminating her. *Id.*

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

To establish a prima facie Title VII retaliation claim, a plaintiff must show (1) that she "engaged in protected opposition to discrimination," (2) "that a reasonable employee would have found the challenged action materially adverse," and (3) "that a causal connection existed between the protected activity and the materially adverse action." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Id.* at 1192. Surviving a motion to dismiss requires more than a general assertion of retaliation; rather, the plaintiff must allege facts that raise an inference of retaliation. *Handy v. WS Barricade Corp.*, No. 24-cv-01263-KAS, 2025 WL 974024, at *5 (D. Colo. Mar. 31, 2025).

The parties do not appear to dispute the first element—that Plaintiff's complaint to the City was protected opposition to discrimination insofar as Plaintiff challenged former

Chief Bess's gender-based harassment. The other matters included in her complaint cannot form the basis for a Title VII retaliation claim. *Boliere v. Robert Brodgen's Olathe Buick-GMC Inc.*, 706 F. Supp. 3d 1275, 1296 (D. Kan. 2023) ("[G]eneralized grievances . . . do not support a retaliation claim" pursuant to Title VII).

Plaintiff identifies three possible adverse actions: (1) she was given minimal assignments; (2) she was placed on a performance improvement plan; and (3) she was terminated. Defendants argue, and the Court agrees, that the first adverse action is unsupported by Plaintiff's own well-pleaded allegations. Specifically, Plaintiff alleged that when Jonke took over as Chief, he assigned her "new tasks which were not in [her] job description and [she] managed to learn new duties slowly and surely." *Fourth Am. Compl.* [#8] at 13. Therefore, this allegation is not "entitled to the assumption of truth." *Khalik*, 671 F.3d at 1193; *Nat'l Inst. of First Assisting, Inc. v. Ass'n of Operating Room Nurses, Inc.*, No. 19-cv-01444-TMT, 2020 WL 8189230, at *3 (D. Colo. Nov. 25, 2020) ("Although this court must accept all well-pleaded allegations as true, it need not accept as true an allegation disproved by an exhibit attached to the complaint."). Additionally, "[i]n the Tenth Circuit, placement on a performance improvement plan, standing alone, does not qualify as an adverse action." *Nelson v. Mayorkas*, No. 23-cv-00100-NYW-SBP, 2024 WL 4136757, at *10 (D. Colo. Jan. 26, 2024) (first citing *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1226 (10th Cir. 2022), and then citing *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1174 (10th Cir. 2018)), *report and recommendation adopted*, 2024 WL 1090301 (D. Colo. Mar. 4, 2024).

Of course, Plaintiff's termination is an adverse action within the meaning of Title VII. But the City argues that Plaintiff has failed to adequately plead a causal connection

between her complaint to the City Administrator and her later termination. *See Motion* [#17] at 8-9; *Reply* [#30] at 6. The Court agrees. Unless there is "very close temporal proximity" between the protected activity and the retaliatory conduct, the plaintiff must allege something more to establish causation. *See O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). Without more, "three or more months between the protected activity and the adverse action is insufficient to establish a causal connection." *Kenfield v. Colo. Dep't of Pub. Health & Env't*, 557 F. App'x 728, 733 (10th Cir. 2014). Here, Plaintiff alleges that she was placed on a performance improvement plan over six months after her complaint and was terminated a year after her complaint. Therefore, she cannot rely on temporal proximity to plead causality.

Further, "temporal proximity has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action." *Nelson*, 2024 WL 4136757, at *14 (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1001-02 (10th Cir. 2011)). A significant intervening event interrupted any marginal temporal proximity in this case: the hiring of a new Fire Chief who (1) had higher expectations for an administrator than the former Fire Chief, and (2) identified various concerns with Plaintiff's performance.

To be sure, Plaintiff plausibly alleges that Jonke told her that her relationship with Rohrich was "not working" and created an awkward environment. But the standard of causation for a Title VII retaliation claim is "but for" causation, not a mixed-motive standard. *Doe v. Bd. of Cnty. Comm'rs of Payne Cnty.*, 613 F. App'x 743, 747 (10th Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)). To the

extent that Plaintiff asks the Court to infer that Jonke formed a retaliatory motive based on Plaintiff's apparent relationship strife with Rohrich, her allegations amount to a contributing factor, or partial motivation, for the termination. Such allegations are insufficient to state a Title VII retaliation claim. *See Allison v. Digital Mgmt. Inc.*, No. 13-cv-00760-CMA-CBS, 2013 WL 5862647, at *5 n.4 (D. Colo. Oct. 31, 2013). Plaintiff's well-pleaded allegations concerning Jonke's high expectations for an administrator, Plaintiff's unfamiliarity with skills that Jonke believed were critical to the job, her slow pace, Jonke's ongoing dissatisfaction with her work, and that these issues were the primary reason for her termination undermine her theory that retaliation was the but for cause of her termination.

Accordingly, the Court **grants** the Motion [#17] and dismisses Plaintiff's Title VII retaliation claim without prejudice. *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) ("Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.").

### C. Claim Two: Hostile Work Environment

In support of her second claim, Plaintiff alleges that Jonke "issu[ed] shifting demands, belittl[ed] Plaintiff's efforts, and [made] clear that she should remain silent and not disturb him." *Fourth Am. Compl.* [#8] at 4. She further alleged that Rohrich gave her the "silent treatment" and did not engage with her outside of assigning projects. *Id.* Plaintiff alleges that this conduct was severe and pervasive. *Id.*

To state a hostile work environment claim, Plaintiff must allege that she was harassed *because* of her membership in a protected class. *Palmer v. U.S. Postal Serv.*,

No. 23-cv-01504-SBP, 2024 WL 7026941, at *2 (D. Colo. July 24, 2024); *Jeffers v. Denv. Pub. Schs.*, No. 16-cv-02243-CMA-MJW, 2017 WL 2001632, at *8 (D. Colo. May 11, 2017), *report and recommendation adopted*, 2017 WL 5441612 (D. Colo. June 1, 2017). Further, to state a Title VII hostile work environment claim, the harassment must be "sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Delsa Brooke Sanderson v. Wy. Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020). At present, Plaintiff's assertions fall far short of establishing that Jonke and Rohrich severely and pervasively harassed Plaintiff based on her gender. Indeed, Plaintiff does not connect the challenged conduct to her gender at all, and the Tenth Circuit has found far more troubling conduct insufficient to establish a hostile work environment. *See, e.g.*, *Morris v. City of Colorado Springs*, 666 F.3d 654, 665-66 (10th Cir. 2012) (affirming dismissal of claim based on allegations that the plaintiff was twice hit on the head and had pericardium tissue thrown at her, along with vague allegations regarding demeaning comments about the plaintiff's abilities).

Accordingly, the Court **grants** the Motion [#17] and dismisses Plaintiff's harassment claim pursuant to Title VII and CADA without prejudice. *Brever*, 40 F.3d at 1131.

### D. Claim Three: First Amendment Retaliation

In support of her third claim, Plaintiff alleges that she complained to the City Administrator about the toxic waste dumping incident, which is a matter of public concern protected by the First Amendment, and that she was punished for doing so in the form of being isolated, denied meaningful assignments, placed on a performance improvement plan, and terminated. *See Fourth Am. Compl.* [#8] at 4.

"When a public employee makes a First Amendment claim, 'the district court must balance the First Amendment interests of that employee, speaking as a concerned citizen, with the government's interests in promoting the efficiency of the public services it performs through its employees.'" *Salemi v. Colo. Pub. Emps.' Ret. Ass'n*, 176 F. Supp. 3d 1132, 1150 (D. Colo. 2016) (quoting *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014)), *aff'd*, 747 F. App'x 675 (10th Cir. 2018). In so doing, courts apply the framework derived from *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Pickering v. Board of Education*, 391 U.S. 563, (1968) (the "*Garcetti*/*Pickering* test"). *See Lincoln v. Maketa*, 880 F.3d 533, 538 (10th Cir. 2018). At the motion-to-dismiss stage, a plaintiff must plausibly allege facts pertinent to the *Garcetti*/*Pickering* framework:

1. The protected speech was not made pursuant to an employee's official duties.
2. The protected speech addressed a matter of public concern.
3. The government's interests as an employer did not outweigh the employee's free-speech interests.
4. The protected speech was a motivating factor in the adverse employment action.
5. The defendant would not have made the same employment decision in the absence of the protected speech.

*Id.* It is well established that "[s]peech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern." *Morris*, 666 F.3d at 661. Although the thrust of Plaintiff's complaint to the City concerned such interpersonal workplace dynamics, she also alerted the City to a toxic waste dumping

incident that had happened several years earlier. Plaintiff narrows her First Amendment retaliation theory to that discrete portion of her complaint to the City.

For purposes of this analysis, the Court assumes without deciding that Plaintiff reported the toxic waste incident in her capacity as a private citizen and that her complaint concerned a matter of public interest. Even if motivated by a personal grievance, Plaintiff reported official misconduct for which she bore no responsibility and had no duty to report. *See Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1251 (10th Cir. 2024) (holding that public employees "speak personally as citizens, outside their official duties" when they "speak[] out against wrongdoing in a citizen forum with no job responsibility to report it"; "engag[e] in categories of activity for which they are not paid"; or "complain[] to authorities about operational issues for which they bear no responsibility"); *id.* at 1251-52 ("Even if personal grievances partially motivate speech, the speech still involves matters of public concern when it reveals official wrongdoings because this interests the public.").

Even so, the connection between Plaintiff's report of the toxic waste dumping incident and her termination a year later is even more attenuated than that of the workplace dynamics. Plaintiff alleges *no* facts that would allow the Court to infer that her termination had anything to do with her reporting the 2021 toxic waste dumping incident. Instead, she asks the Court to rely on nothing but sheer speculation that Jonke must have terminated her because she brought the incident to light. *See Farrah v. City & County of Denv.*, No. 23-cv-02868-STV, 2026 WL 709689, at *11 (D. Colo. Mar. 12, 2026) (dismissing claim premised on vague, speculative allegations). Therefore, Plaintiff fails to plausibly allege facts that would satisfy the fourth and fifth elements of the *Garcetti*/*Pickering* test. Without some further factual enhancement to connect the toxic

waste incident to her termination, Plaintiff's claim "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557.

Accordingly, the Court **grants** the Motion [#17] and dismisses Plaintiff's First Amendment retaliation claim without prejudice. *Brever*, 40 F.3d at 1131.

### E. Final Note

The Court recognizes that Plaintiff filed a Response [#24][6] that includes far more detail, evidentiary support, and self-generated "exhibits" than the Fourth Amended Complaint [#8]. However, a motion to dismiss tests the sufficiency of the allegations raised in the *operative* complaint. In assessing that question, the Court may not consider any statements of fact or supporting evidence alleged for the first time outside the pleadings, including in Plaintiff's response brief. *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (noting that a plaintiff "cannot amend her complaint by adding factual allegations in response to [a d]efendant's motion to dismiss"). In fact, contrary to what Plaintiff might have intended, the inclusion of voluminous additional factual allegations in her response brief actually *impedes* the Court's ability to answer the narrow question before it: whether the current Fourth Amended Complaint [#8] is legally sufficient to state a claim. The way for Plaintiff to clarify facts, add details, and provide evidentiary support to bolster her claims is not by submitting a lengthy response brief or additional notices. It is by moving for leave to amend the operative complaint to include such information. Therefore, to the extent Plaintiff believes she can cure the deficiencies

---

[6] The Court reminds Plaintiff of the undersigned's practice standards, which provide that unless otherwise ordered, parties' motions and responses are limited to 15 pages and replies are limited to 10 pages. D.C.COLO.MJ V(2). Further, to the extent that Plaintiff asks the Court to take judicial notice of her voluminous self-generated exhibits, such request violates this District's Local Rule 7.1(d). *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document.").

that the Court has identified above, she may file a Motion for Leave to Amend that complies with Fed. R. Civ. P. 15 and this District’ s Local Rule 15.1(b).

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#17] is **GRANTED**.

IT IS FURTHER **ORDERED** that Defendant’s Motion to Stay Discovery [#31] is **DENIED as moot**.

IT IS FURTHER **ORDERED** that Plaintiff shall file any motion to amend the complaint and a proposed amended complaint in red-line form, pursuant to D.C.COLO.LCivR 15.1, by **October 23, 2026**.

Dated: September 23, 2026

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge